**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALAN TRAVIS JUDGE**<br>Syracuse, NY 13210<br><br>***Plaintiff,***<br><br>v.<br><br>**MOYER & SON, INC. d/b/a MOYER INDOOR OUTDOOR**<br>113 East Reliance Road<br>Souderton, PA 18964<br><br>***Defendant.*** | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

## I. INTRODUCTION

Plaintiff, Alan Travis Judge ("Plaintiff"), brings this action against his former employer, Moyer & Son, Inc. d/b/a Moyer Indoor Outdoor ("Defendant"). Plaintiff, who is Black, worked under a supervisor who used the most vile racial slur in the English language against him. Defendant does not deny it. In a verified submission to the Pennsylvania Human Relations Commission ("PHRC"), Defendant admitted that the supervisor told Plaintiff that he "dress[es] like a n****r" and further admitted that the supervisor "made race-based and derogatory comments" about Plaintiff.

When Plaintiff reported the racist conduct to Human Resources, Defendant did not protect him. Instead, the Human Resources representative assigned to his complaint asked Plaintiff to explain the difference between "n****r" and "n****a." Plaintiff was then out of work recovering from serious injuries he suffered in a car accident, which Defendant knew about. The day after Plaintiff's telephone complaint, Defendant told him for the first time that there was a problem with

his leave paperwork. Around one month after Plaintiff provided a doctor's note stating that he needed two months to recover, and a little more than one month after his complaints of race discrimination, Defendant fired him. Defendant failed to accommodate Plaintiff's disability and never engaged in the interactive process.

Defendant discriminated against Plaintiff because of his race and his disability, including by subjecting him to a racially hostile work environment, and retaliated against him because he complained of race discrimination. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"); the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"); the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"); and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et seq. ("PHRA"). Plaintiff seeks all damages, including economic loss, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

## II. PARTIES

1. Plaintiff, Alan Travis Judge, is an individual and a citizen of the United States. At all times material hereto, Plaintiff resided in Philadelphia, Pennsylvania, and worked for Defendant in the Commonwealth of Pennsylvania.

2. Plaintiff is African-American (Black).

3. At all relevant times, Plaintiff was "disabled" in that he suffered from an impairment that substantially limited one or more of his major life activities, had a record of such impairment, and/or was regarded as having such impairment.

4. Defendant, Moyer & Son, Inc. d/b/a Moyer Indoor Outdoor, is a corporation that maintains a principal place of business at 113 East Reliance Road, Souderton, PA 18964.

5. Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

6. At all times material hereto, Defendant employed fifteen (15) or more employees.

7. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

8. At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

9. At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

## III. JURISDICTION AND VENUE

10. The causes of action which form the basis of this matter arise under Title VII, Section 1981, the ADA, and the PHRA.

11. This Court has jurisdiction over Count I (Title VII), Count II (Section 1981), and Count III (ADA) pursuant to 28 U.S.C. § 1331.

12. This Court has supplemental jurisdiction over Count IV (PHRA) pursuant to 28 U.S.C. § 1367.

13. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred within this District.

14. On or about June 24, 2025, Plaintiff filed a Complaint of discrimination with the PHRC, complaining of the acts of discrimination and retaliation alleged herein. That Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC") and was docketed as PHRC Case No. 202402636 and EEOC Charge No. 17F-2025-60928. Attached hereto

and incorporated herein as Exhibit "1" is a true and correct copy of Plaintiff's agency Complaint (with personal identifying information redacted).

15. On or about August 27, 2026, the EEOC issued to Plaintiff a Notice of Right to Sue pertaining to Plaintiff's agency Complaint. Attached hereto and marked as Exhibit "2" is a true and correct copy of that Notice.

16. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV. FACTUAL ALLEGATIONS

17. Plaintiff is an African-American (Black) male.

18. Plaintiff began working for Defendant on or about May 18, 2023.

19. At the time of the termination of his employment on February 24, 2025, Plaintiff was employed as a Technician.

20. Plaintiff reported directly to Anthony Keo, Supervisor.

21. Mr. Keo reported directly to Dennis Murphy, Branch Manager.

22. Mr. Murphy reported to David Moyer, Owner.

23. On numerous occasions during Plaintiff's tenure with Defendant, Mr. Keo made race-based and derogatory comments about Plaintiff and other Black individuals.

24. Mr. Keo told Plaintiff that he "dress[es] like a n****r."

25. In its verified Answer to Plaintiff's PHRC Complaint, dated November 4, 2025, Defendant admitted that Mr. Keo told Plaintiff that he "dress[es] like a n****r," and admitted that Mr. Keo "made race-based and derogatory comments" about Plaintiff.

26. After Plaintiff made a mistake, Mr. Keo called Plaintiff a "n****r."

27. Mr. Keo stated that Black people are "stupid" and "they just want to stay home and

not work and collect welfare."

28. Mr. Keo told Plaintiff that he looked "ghetto" when Plaintiff wore a durag bandana.

29. On December 8, 2024, Plaintiff was involved in a hit-and-run car accident.

30. That same day, Plaintiff sent text messages to Mr. Keo informing him of the accident and that he might not be able to come to work, including photographs of his damaged car and of Plaintiff at the hospital. Mr. Keo responded, "Are you okay? Let me know asap so i can make arrangements."

31. As a result of the car accident, Plaintiff suffered severe damage to his neck and back and had several physical restrictions relating to bending, moving, and lifting.

32. On December 12, 2024, Terri Moyer, Defendant's Payroll and Benefits Coordinator, emailed Plaintiff on her own initiative about the accident and about filing for short-term disability benefits and leave under the Family and Medical Leave Act.

33. In or about December 2024, Plaintiff applied for short-term disability benefits through Defendant's carrier, New York Life, in connection with his medical condition.

34. On or about December 17, 2024, Plaintiff gave Mr. Keo a doctor's note prescribing physical therapy, and Mr. Keo forwarded the note to Ms. Moyer, who confirmed to Plaintiff that she had received it.

35. On January 8, 2025, while he was out on leave, Plaintiff complained of discrimination in writing, by email, to Lisa Futchko of Human Resources.

36. In his email, Plaintiff wrote to Ms. Futchko that he was filing a complaint against Mr. Keo. Plaintiff wrote that Mr. Keo had called him a "n****r" and a "n****a."

37. Plaintiff also wrote that on numerous occasions Mr. Keo had stated that African Americans are inferior and that "they don't want to work so they can sit at home and collect

welfare."

38. On January 10, 2025, Plaintiff filled out an Inquiry Form with the EEOC.

39. On January 13, 2025, Plaintiff filled out an Inquiry Form with the PHRC.

40. On or about January 13, 2025, Plaintiff spoke with Ms. Futchko and Mr. Murphy over the telephone.

41. Plaintiff explained to Ms. Futchko and Mr. Murphy that he was being subjected to a hostile work environment and reiterated his complaints about Mr. Keo calling him a "n****r."

42. Ms. Futchko told Plaintiff that the company would investigate his complaint.

43. Ms. Futchko asked Plaintiff what the difference is between a "n****r" and a "n****a."

44. At the time Plaintiff made these complaints, Plaintiff was out of work, with Defendant's knowledge, because of the injuries he suffered in the car accident.

45. On January 14, 2025, one day after Plaintiff's telephone complaint to Ms. Futchko and Mr. Murphy and six days after his written complaint, Ms. Moyer emailed Plaintiff that his leave paperwork was incomplete.

46. Before January 14, 2025, no one at Defendant had told Plaintiff that there was any problem with his leave paperwork.

47. On January 16, 2025, Plaintiff told Ms. Moyer by email that he had a doctor's appointment the following week and would provide a doctor's note at that time.

48. On January 21, 2025, Plaintiff emailed Ms. Moyer a note from his treating provider, MossRehab, stating that he would be out of work for two months.

49. Ms. Moyer confirmed receipt of the note and stated that she would send it to New York Life.

50. On February 24, 2025, Plaintiff received a telephone call from Ms. Futchko and Mr. Murphy.

51. During that call, Ms. Futchko and Mr. Murphy told Plaintiff that his short-term disability claim was denied and that therefore he was being terminated by the company.

52. No one had told Plaintiff previously that his employment with Defendant was contingent on his receipt of short-term disability benefits.

53. Defendant was aware of Plaintiff's medical condition and did not engage in an interactive process.

54. Defendant did not discuss any reasonable accommodations that would have allowed Plaintiff to return to work, including additional time off to recover.

55. Defendant terminated Plaintiff's employment while he was out of work recovering from his injuries, with Defendant's knowledge.

56. Defendant terminated Plaintiff's employment less than five weeks after Plaintiff provided the doctor's note stating that he would need two months to recover, and before that two-month period had elapsed.

57. Ms. Futchko and Mr. Murphy informed Plaintiff of his termination less than two months after Plaintiff complained, in writing and over the telephone to both of them, of race discrimination and a racially hostile work environment.

58. Defendant's stated reason for terminating Plaintiff's employment is false and pretextual.

59. The real reason Defendant terminated Plaintiff's employment is because of his race, his disability, and his complaints of race discrimination.

60. Before Plaintiff complained of race discrimination and went out of work because

of his injuries, Plaintiff had no indication that his job was in jeopardy.

61. Defendant subjected Plaintiff to a hostile work environment because of his race, his disability, and his complaints of race discrimination.

62. Defendant's discriminatory and retaliatory conduct, as alleged herein, was severe or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of his employment had been altered and that a hostile work environment existed.

63. Plaintiff's race was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including, without limitation, in connection with the hostile work environment to which he was subjected and his termination.

64. Plaintiff's disability was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including, without limitation, in connection with his termination.

65. Plaintiff's complaints of race discrimination were a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff, including, without limitation, in connection with the hostile work environment to which he was subjected and his termination.

66. The retaliatory actions taken against Plaintiff after he complained of race discrimination would have discouraged a reasonable employee from complaining of discrimination.

67. Defendant's discriminatory and retaliatory conduct toward Plaintiff has caused him emotional distress.

68. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or

earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

**COUNT I – TITLE VII**

69. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

70. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

71. Said violations were done with malice and/or reckless indifference to Plaintiff's federally protected rights and warrant the imposition of punitive damages.

72. As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

73. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

74. No previous application has been made for the relief requested herein.

**COUNT II – SECTION 1981**

75. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

76. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Section 1981.

77. Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant the imposition of punitive damages.

78. As a direct and proximate result of Defendant's violations of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

79. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

80. No previous application has been made for the relief requested herein.

**COUNT III – ADA**

81. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

82. By committing the foregoing acts of discrimination against Plaintiff, Defendant has violated the ADA.

83. As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has suffered the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

84. The conduct of Defendant, as set forth above, was willful, malicious, and outrageous under the circumstances and warrants the imposition of punitive damages against Defendant.

85. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

86. No previous application has been made for the relief requested herein.

**COUNT IV – PHRA**

87. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in

their entirety.

88. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the PHRA.

89. Said violations were intentional and willful.

90. As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

91. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

92. No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of Title VII;

(b) declaring the acts and practices complained of herein to be in violation of Section 1981;

(c) declaring the acts and practices complained of herein to be in violation of the ADA;

(d) declaring the acts and practices complained of herein to be in violation of the PHRA;

(e) enjoining and permanently restraining the violations alleged herein;

(f) entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

(g) awarding damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(h) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(i) awarding punitive damages to Plaintiff under Title VII, Section 1981, and the ADA;

(j) awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, the ADA, and the PHRA;

(k) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(l) granting such other and further relief as this Court may deem just, proper, or equitable, including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Date: 11/20/2026

By: */s/ Rahul Munshi*
RAHUL MUNSHI, ESQUIRE
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
Phone: (215) 545-7676
munshi@consolelaw.com

*Attorney for Plaintiff, Alan Travis Judge*